### CARNEY v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1924.)

No. 4084.

1. **Criminal law** ⊚⟹762(1)—**Instructions; limitation on comments on the evidence.**

Conceding the right of a judge to sum up and comment on the evidence, even to the expression of an opinion on the facts, provided it is made perfectly clear to the jury that they are not bound by such expressed opinion, in the exercise of the right there is always the limitation that the comments of the judge should be dispassionate and carefully guarded, so that the jurors shall be free to use their independent judgment.

2. **Criminal law** ⊚⟹762(3)—**Instructions; comments on evidence held prejudicial error.**

A charge on the facts, which was argumentative in form and told the jury they were not to be "hoodwinked and bamboozled" by unreasonable testimony, and which was likely to be taken by the jurors as advising them that, if they should acquit, it would be because they had been deceived by trickery on the part of defendant and his witnesses, *held* prejudicial error.

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Criminal prosecution by the United States against Anthony Carney. Judgment of conviction, and defendant brings error. Reversed.

Wheeler & Baldwin, of Butte, Mont., for plaintiff in error.

John L. Slattery, U. S. Atty., of Helena, Mont., Ronald Higgins, Asst. U. S. Atty., of Missoula, Mont., and W. H. Meigs, Asst. U. S. Atty., of Helena, Mont.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HUNT, Circuit Judge. Carney, plaintiff in error, was convicted under three counts of an information charging violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). The counts charged possession of intoxicating liquor intended for use in violation of law, possession of property designed for the manufacture of intoxicating liquor, and the maintenance of a common nuisance.

[1, 2] We are of the opinion that it was prejudicial to the rights of the defendant for the court to charge the jury in the language used and quoted in the last point discussed in the dissenting opinion of Judge GILBERT. Conceding, always, the right of the judge to comment upon the evidence and to sum it up, even to the expression of opinion upon the facts, provided it is made perfectly clear to the jury that they are not bound by the expressed opinion of the judge, nevertheless in the exercise of the right there is always the limitation that the comments of the judge should be dispassionate and carefully guarded, so that the jurors shall be free to use their independent judgment. It seems to us that a juror, listening to the charge complained of, would feel that the court was, in effect, advising that, if they should acquit, it would be because they had been hoodwinked and deceived by trickery on the part of the defendant and his witnesses. Such strictures might well have been regarded as a moral command to reject the evidence of the defendant. Horning v. District of Columbia, 254 U. S. 135, 41 Sup. Ct. 53, 65 L. Ed. 185, is not applicable, for in that case the facts were agreed upon, or, as the court put it: "The external facts are not disputed." Here they were in dispute. Defendant was a shift boss at a mine, and away from his home during the daytime, and positively denied any knowledge or suspicion that the tenant who rented the room in his home had liquor therein, or had a still, or was maintaining a nuisance therein.

Except in respect to the one point, we agree with the views expressed by Judge GILBERT. For error in the instructions, defendant is entitled to have the judgment against him set aside, and to be awarded a new trial.

Reversed.

GILBERT, Circuit Judge (dissenting). The plaintiff in error was convicted on counts 3, 4, and 5 of an information which charged him with violation of the National Prohibition Act. Count 3 charged him with having possession of intoxicating liquor intended for use, in violation of the law; count 4 charged him with having in his possession property designed for the manufacture of intoxicating liquor, in violation of the law; and count 5 charged him with maintaining a common nuisance, that is to say, a place where intoxicating liquor was kept and manufactured, in violation of the law.

It is contended that the court below was without authority to grant the request of the district attorney for leave to file the information on which the plaintiff in error was tried, for the reason that the affidavits which were filed in support thereof were fatally defective, and that therefore the plaintiff in error was improperly arrested and tried. No attack upon the information or the jurisdiction was made in the court

below. It is made for the first time in this court. It is to be conceded that an information for the purpose of obtaining a warrant of arrest must be supported by proof establishing probable cause. But in the present case the information was filed for the sole purpose of accusing the defendant of an offense against the United States. It does not appear that it was filed for the purpose of obtaining a warrant of arrest, or that any warrant was ever issued thereon. It was not necessary, therefore, that the information should be either verified or supported by affidavits. Weeks v. United States, 216 Fed. 292, 132 C. C. A. 436, L. R. A. 1915B, 651, Ann. Cas. 1917C, 524; United States v. Simon (D. C.) 248 Fed. 980; Brown v. United States, 257 Fed. 703, 168 C. C. A. 653; United States v. Newton Tea & Spice Co. (D. C.) 275 Fed. 394; Keilman v. United States (C. C. A.) 284 Fed. 845.

It is argued that the information is insufficient in the third and fifth counts, in that it fails to allege that the acts complained of were then and there prohibited and unlawful. United States v. Cleveland (D. C.) 281 Fed. 249, is cited to the proposition that it is not sufficient in an indictment for unlawful possession of liquor to allege merely the possession of liquor by the defendant and his intended use thereof as a beverage, and reference is made to section 32 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½s), which provides that it shall not be necessary in an indictment or information to include any defensive negative averments, "but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful." In answer to this it is sufficient to say that the information charged that the defendant did "then and there wrongfully and unlawfully have and possess intoxicating liquor intended for use, in violation of title 2 of the National Prohibition Act." Thereby it substantially complied with the requirement of the statute. Rulovitch v. United States (C. C. A.) 286 Fed. 315.

It is assigned as error that the trial court, in disposing of the defendant's motion for a directed verdict at the close of the testimony for the government, said:

"The evidence is enough to hang a man if he was on trial for murder. The motion is denied."

These words referred to the case made for the prosecution. No exception was taken to the language of the court. Thereafter testimony was introduced for the defense. At the close of the testimony the court, in instructing the jury, told them that his function was to declare the law applicable to the case and that theirs was to determine the truth where the facts were in dispute. The court said:

"Remember, while you take the law from me, you don't take the facts from me. I might tell you out and out whether I think the defendant guilty. I may comment on witnesses and evidence; but, even if I did, it wouldn't bind you to come to the same conclusion."

Again the court said:

"You are the exclusive judges of the weight of the testimony and credibility of the witnesses."

It is not error to say in the presence of the jury that in the opinion of the court the evidence establishes the guilt of the accused, so long

as the court properly instructs the jury that they are not to be controlled by his opinion, and that irrespective thereof it is for them · to determine the question of the defendant's guilt or innocence. Horning v. District of Columbia, 254 U. S. 135, 41 Sup. Ct. 53, 65 L. Ed. 185; Dillon v. United States (C. C. A.) 279 Fed. 639.

We find no error in the denial of the defendant's motion for an instructed verdict of acquittal. There was ample evidence to sustain a conviction. The plaintiff in error owned and occupied as his residence a one-story frame cottage, through which ran a hallway about four feet wide, leaving on the east side thereof two rooms and on the west side three; each room having a door opening into the hallway. There was evidence that a gas inspector went to the house to read the gas meter. When he knocked at the door, the defendant's wife came to the door, and, on learning his business, said: "You can't come in now. Wait a minute." He waited 20 minutes, and then went to the police station and returned with two police officers. The officers, when they came to the door, noticed a strong odor of fermented mash, and they testified that the odor was noticeable throughout the house. The officers were admitted into the hallway by Mrs. Carney. The door of one of the rooms on the east side of the hallway was partly open, and through it the officers saw a still. On entering the room they found the still on a stove, also mash, and about a half a gallon of moonshine whisky. In the adjoining room on the east side was found a 50-gallon barrel of mash and a 10-gallon keg of mash, all in a state of fermentation. The officers took possession of the still and the mash and removed them.

Thereafter Mrs. Carney inquired of them whether they had a search warrant. Up to that time she had stood beside the officers, and had made no explanation of the presence of the still or the mash or the moonshine in the house. After she made the inquiry about the search warrant, she informed the officers that the rooms on the east side of the hall were rented to a man by the name of O'Donnell. There was no sign of habitation in either of those rooms, except the bed; no kitchen utensils, no food, no trunk, no shoes, or hats, or clothing. The defendant testified that the rooms on the east side were rented to a man by the name of O'Donnell, and that he had never suspected that there was a still or mash on the premises until he was told so by the officers at the time when they arrested him, which was two days after they had seized the still and mash.

It is urged that the trial court erred in using certain expressions which are found in the following instruction:

"But you ask yourself whether it is not likely that this O'Donnell, if such a man existed; and it looks fairly reasonable that he did, and this defendant were in partnership in carrying on these operations; is it reasonable that a bootlegger and moonshiner would rent an apartment in the situation these were, having all appliances such as mash and still, having it in operation across the hall, with children running around, unless he and the landlord or owner were jointly interested, working together in violation of the law? You are not to be hoodwinked and bamboozled by anybody; not by unreasonable testimony, if it is unreasonable. Remember the witnesses on either side can swear that black is white, if they think they can cause you to credit it, or to entertain a reasonable doubt; but you are not to be gulled.

295 F.—39

As my honored predecessor, Judge Knowles, said, you are not to believe a thing is so simply because some one swears it's so and if a witness testifies that down the street he saw an elephant climb a telephone pole, you are not bound to believe it's a fact, even though he shows you the pole. You determine the true and false, no matter from what witness the evidence comes: Now, gentlemen of the jury, that's the case for you; you have heard it all; you are men of common sense and reason; draw upon your own experience; conceive what your own conduct would be, if across your hallway from your kitchen door of your own home a tenant set up a moonshine outfit and made moonshine whisky; would you know it, how long would you tolerate it? Isn't it the reasonable fact to assume that, if there was such a man O'Donnell, he and the defendant were in cahoots in carrying on that unlawful business? Before you can find defendant guilty of making, you must be satisfied from the circumstances that the liquor was made there by the defendant or some one associated with him. You have a right to conclude that he and O'Donnell were partners, but the court doesn't tell you you ought to so determine. As a matter of law the court tells you the inference from the circumstances is warranted, but whether you will draw the inference depends upon your judgment entirely."

In cautioning the jury against being hoodwinked or bamboozled, or being gulled, the court in our opinion used expressions that ought not to be employed in any charge to a jury. The terms are vigorous and picturesque, but they are attended with some degree of opprobrium, and are calculated to convey to the jury the impression that, in the mind of the court, if they credited the testimony for the defense or the contention of the defendant's counsel, they would impugn their own intelligence and the sanity of their judgment. In a case in which the evidence is more evenly balanced than it is here, such an instruction might so influence the minds of the jurors as to constitute reversible error. But in this case the evidence overwhelmingly pointed to the guilt of the defendant. The jurors would indeed have been "hoodwinked" and "bamboozled" if they had believed the defendant's testimony. It is simply inconceivable that the fermentation of the mash and the operation of the still and the manufacture of moonshine whisky could have been carried on as it was in the cottage which he owned, and in which he and his family lived, without his having had knowledge of it.

According to the testimony for the defense, the "materials" out of which the 60 gallons of mash were prepared had been delivered on the premises in April. This material, as also the still and the 50-gallon barrel and the 10-gallon keg, must have been carried into the premises through the narrow hall in the center of the building. It is matter of common knowledge that the odor of fermenting mash is penetrating, persistent, and pervading. It so surrounded the premises on the day when the seizure was made as to be noticeable in the street. The mash that was then in fermentation was probably not the first that had been prepared on the premises, for there was found a half a gallon of corn whisky, presumably the product of a previous fermentation. A juror must needs be lacking in common intelligence who could believe that all this was going on unknown to the defendant, who was living on the premises and daily going to and coming from his work. Nor is it credible that the defendant's wife did not tell him of the visit of the officers and their removal of the still and the mash from the premises, and

that he first heard of it from the officers when they arrested him two days later.

A case directly in point is Horning v. District of Columbia, 254 U. S. 135, 41 Sup. Ct. 53, 65 L. Ed. 185. In that case the trial court had instructed the jury as follows:

"A failure by you to bring in a verdict in this case can arise only from a willful and flagrant disregard of the evidence and the law as I have given it to you, and a violation of your obligation as jurors. * * * Of course, gentlemen of the jury, I cannot tell you, in so many words, to find defendant guilty but what I say amounts to that."

It was held that, if the defendant suffered any wrong from the manner in which the instructions were given, it was purely formal, since there could be no doubt of his guilt on the admitted facts, and that section 269 of the Judicial Code (Comp. St. § 1246) cured the error, if any there was. Surely the instructions in that case went farther in the direction of the invasion of the jury's province than did the instructions in the case at bar. In Shea v. United States, 251 Fed. 440, 163 C. C. A. 458, in instructing the jury, the trial court had said:

"The telegraph and telephone instruments were but shams, in that neither was a real instrument of communication; the announcements and posting of races were shams; the bookings were tricks. Any one who devised this scheme produced just such a fraudulent device as the statute condemns."

It was held that, in view of the other portions of the instructions, the instruction objected to did not constitute error. See, also, Calcutt v. Gerig (C. C. A.) 271 Fed. 220, and Dillon v. United States (C. C. A.) 279 Fed. 639.

The writer of this opinion is not convinced that the judgment should be reversed.