## DWYER et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 7, 1927.)

No. 225.

**1. Criminal law ⚖⇒827—Request to charge as to presumption of innocence, reasonable doubt, credibility of witnesses, and that jurors are judges of fact, held bad in form.**

Defendant's omnibus request to charge as to presumption of innocence, reasonable doubt, credibility of witnesses, that jury is not bound to take evidence as it is heard, and is sole judge of facts, and that every juror has a right to his own well-founded and conscientious opinion, *held* bad in form.

**2. Criminal law ⚖⇒826—Request for charge after close of charge held too late.**

Requested charge, tendered after close of trial court's colloquial charge, *held* too late under rules of trial court.

**3. Criminal law ⚖⇒863(1)—Trial court, in exercise of sound discretion, may send for jury for further instructions at any time.**

Trial court, in exercise of sound discretion, may send for jury and further instruct them at any time after they have retired.

**4. Criminal law ⚖⇒762(2)—Trial court may comment on evidence and express opinion, if it unequivocally instructs that jury is sole judge thereof.**

Trial court may comment on evidence and express opinion thereon, and on accused's guilt or innocence, if jury is unequivocally instructed that it is exclusive judge of facts, and only when such expressions are argumentative, and unduly dwell on particular evidence, is sound discretion exceeded.

**5. Criminal law ⚖⇒865(1)—Instruction given on court's own motion, when jury failed to agree, to consider evidence with open minds, held not erroneous as coercing jury.**

Supplemental instruction, given without request of jury after they failed to agree that jurors should consider matters with open minds and listen to what other jurors say, and that real question is whether charges of conspiracy against defendants are cock and bull story, or whether they are facts, but without dwelling on evidence, or intimating what verdict should be, *held* not erroneous, as tending to coerce jury.

Manton, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

William V. Dwyer and another were convicted of conspiring to import, transport, possess, and sell intoxicating liquor, in violation of the National Prohibition Law, and they bring error. Affirmed.

See, also, 13 F. (2d) 427.

The indictment charged plaintiffs in error and some 15 other named individuals, as well as persons "to these grand jurors unknown," with the crime of conspiring (Criminal Code § 37 [Comp. St. § 10201]) to import, transport, possess, sell, etc., intoxicating liquor, in violation of the National Prohibition Law (Comp. St. § 10138¼ et seq.).

The scheme in substance charged, and proven at great length, was that those accused, with Dwyer as leader and Cohron as an important associate, were regularly engaged in sending out launches—i. e., small and rapid boats—from New York Harbor to vessels lying 15 or 20 or more miles from the coast, there obtaining liquor, and delivering the same, usually by night, at some place in the harbor, preferably a "cutting station," where "one case would be made into three."

The evidence against the accused was in large part that of accomplices; i. e., of persons who told how they had been hired by Dwyer or Cohron to perform acts which directly tended to prove the conspiracy alleged.

There were other counts in the indictment charging violation of the Customs or Tariff Acts; of these charges plaintiffs in error were acquitted. To judgment on the conspiracy count, this writ was brought.

Benjamin F. Spellman and Howard H. Spellman, both of New York City, for plaintiff in error Dwyer.

Emanuel Tacker, of New York City, for plaintiff in error Cohron.

Emory R. Buckner, U. S. Atty., and Herman T. Stichman, Asst. U. S. Atty., both of New York City.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). A considerable number of exceptions have been called to our attention regarding the admission or rejection of evidence, and particularly evidence of declarations or acts of persons said not to be proven conspirators. There is also complaint that caution in accepting the evidence of accomplices was not sufficiently insisted upon, and further complaint that the prosecution was not compelled to elect as to the count upon which it would go to the jury.

We have considered all these matters. As questions of law they are not novel, nor is there anything singular or instructive in the way the questions arose.

The proof of the existence of a very widespread conspiracy was, we think, unusually direct and persuasive, and to discuss the details of these exceptions would not serve any good purpose; suffice it to say that we think they are all without merit.

The plaintiffs in error did not testify; such evidence as was given for the defense was in substance confined to attacking the motives or impugning the character of witnesses for the prosecution, and we may note our opinion that, without throwing out wholly the evidence for the prosecution as unworthy of belief, conviction on the conspiracy count was inevitable, while, owing to the technicalities contained in such words as "entry" and "smuggle," the counts under the Tariff Act presented more difficulty and more excuse for prolonged consideration by a jury.

Trial occurred in July in New York City, and the presiding judge was at the time living out of town. The case went to the jury at 11:45 a. m., after a colloquial charge to which no exception had been taken, and due consideration had been given to the defendants' written requests for instruction.

The jury returned twice and asked to have certain testimony read to them. At 10 p. m. the court sent for the jury and thus addressed them:

"I have had you come in now in order to ascertain your own wishes in regard to further procedure and to tell you mine. I am going to keep you together until you come to an agreement. That is the first thing. If you believe that you are likely to come to an agreement in the next half hour or so, I will remain here. If you do not think that you are likely to come to an agreement within that time, I shall leave here in five minutes, and you can deliberate as long as you please tonight, until 11 o'clock, and then I have made arrangements for you to travel together to a good hotel and to remain there together for the night. Then you can begin your deliberations again to-morrow morning, so that all I care to know at this moment is whether you believe it is worth my while, not leaving now, but remaining, in the thought that you may come to an agreement within the next hour, or whether you believe we might just as well go now, because I am living out in the country, and let you keep on with your deliberations until such hour as you desire and remain together for the night. The point is that, if you think there is a reasonable chance of your reaching an agreement, say within the next hour or so, I do not want to keep you locked up in a hotel, simply to give me the opportunity of going out in the country. On the other hand, if you do not think so, then I do not care to stay in town, because my family is in the country.

"Juror No. 4: It does not point that we shall be able to get through to-night.

"The Court: You do not think it will be necessary for me to be on hand to-night?

"Juror No. 4: No.

"The Court: Then there is just one other word I will say to you now, gentlemen, and that is that when in the jury room you want to be open-minded about matters, and listen to what the other fellow has got to say, and never stick to a thing just because you have said it. A wise man is always open to reason, to argument, and he never closes his ears to that, just because he has at one time made up his mind. You have heard all this evidence; you have listened to it carefully. The real question is whether these things happened, or any of them, that are vital to the case, or whether they did not happen, and whether these men entered into a conspiracy or conspiracies as charged, or whether they did not, and whether any of the overt acts stated in the indictment as to each count—any one of them—was or was not done, and whether you believe that beyond a reasonable doubt on the evidence, and, as I have said so often, it comes down to a question of whether it is all a cock and bull story, made up by somebody for some reason or other, or whether it is a fact that has been testified to, or facts."

Of this counsel for Dwyer complained by saying:

"I take exception to your honor's remarks, for the reason the jury did not ask for any further instructions."

And thereafter they orally requested the court to "now charge as to the presumption of innocence, as to reasonable doubt, as to credibility of witnesses, and that they are not bound to take the evidence as they hear it, and that they are the sole judges of the facts, and that every juryman has a right to his own well-founded and conscientious opinion."

This the court refused, saying in substance that the matter had been sufficiently covered already. Within a half hour the jury returned with the verdict now complained of.

What occurred, as thus indicated, is said to constitute reversible error for three reasons: (1) Because anything was said at the time; (2) because of the language used in the saying; and (3) because the whole episode "deprived the accused of a fair trial," or "amounted to coercion of the jury."

[1-3] The omnibus request last above quoted is bad in form, and it was also too late under the rules of the trial court, having been tendered after the close of the colloquial charge. Kreiner v. United States (C. C. A.) 11 F. (2d) 722. As to the complaint about the entire episode, there can be no doubt of the

right of the court to send for the jury and further instruct them at any time, in the exercise of a sound discretion. So much is held in Allis v. United States, 155 U. S. 117, 15 S. Ct. 36, 39 L. Ed. 91; and such is the general rule in the state courts (16 C. J. p. 1087). [4] In the language used we perceive no error. The right, and indeed the duty, of a trial judge in respect to comment on the facts, is most strikingly illustrated in Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185. The facts in this case, being in dispute, did not call for the application of that case; but the right of the trial court to express its opinion on the facts, and on the guilt or innocence of the accused, has so often been stated, that it is sufficient to refer to one of the more recent decisions in this circuit (Robinson v. United States [C. C. A.] 290 F. 755), wherein it is stated that the trial judge may so express his opinion, "provided the jury is given unequivocally to understand that it is not bound by his opinion as to the facts, but is the exclusive judge thereof" (Savage v. United States [C. C. A.] 270 F. 14; Wolff v. United States [C. C. A.] 299 F. 90).

It is only when such expressions of opinion are argumentative in form and unduly dwell upon some particular evidence, either directly or by necessary inference, that sound discretion is exceeded and reversible error found, as in Carney v. United States (C. C. A.) 295 F. 606.

[5] Nor is it error at any time to dwell upon the well-known and salutary rule in Allen v. United States, 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528, and upon the duty of jurymen to listen to each other's arguments and be persuaded to a decision by reason, rather than to prevent any decision by obstinate adherence to earlier impressions. This has been recently considered in Shaffman v. United States (C. C. A.) 289 F. 370. The matter is one of degree, and we prefer the view taken in the Shaffman Case, supra, to that intimated in Nigro v. United States (C. C. A.) 4 F. (2d) 781, and in Stewart v. United States (C. C. A.) 300 F. 769.

If the whole episode be viewed as an entirety, we are unable to perceive that it had any tendency to coerce the jury or to treat any accused with unfairness. Coercion, as distinguished from duress, has often been called a moral wrong. There can be no wrong in reminding a body of jurors of their duty to exercise intelligence and listen to reason, and that was all that was done in the present instance. At no time in the course of his remarks to the jury did the judge even express an opinion as to the guilt or innocence of any one; he had called attention (and this was favorable to the defense) to the obvious falsity of some portions of the testimony of one of the principal witnesses for the prosecution, and that was as far as he had gone in the exercise of the court's undoubted rights.

Indeed, this whole point comes down to an objection to the use of the words "cock and bull." The phrase may be inelegant, it may sometimes be inappropriate, but for the purpose of bringing home to the jury the fact that there was no halfway between acceptance or rejection of the bald statements of facts that had been made by numerous witnesses who testified to their personal part in the illegal bringing in of liquor, we think the expression well chosen and quite timely. There was no dwelling upon selected portions of the evidence, nor upon the testimony of one or a few men; it was an insistence on the jury's consideration of the unquestioned truth that a body of witnesses had sworn to certain facts which reasonable men must either accept or reject.

We find no error in this record, and direct that the judgments be affirmed.

MANTON, Circuit Judge (dissenting). No one may complain of the action of the trial judge in sending for the jury at 10 p. m. to address them on the matter of his own convenience, and providing for the jury's confinement at the hotel overnight if they did not arrive at a verdict at 11 o'clock, and for their further deliberation the next morning. As pointed out in the prevailing opinion, juror No. 4 announced that the jury would not be able to agree that night. There was no dissent or comment adverse to such a statement by any of the other jurors. It may well be said that he spoke the mind of all. Whereupon the court delivered an unrequested charge as follows:

"The Court: Then there is just one other word I will say to you now, gentlemen, and that is that when in the jury room you want to be open-minded about matters, and listen to what the other fellow has got to say, and never stick to a thing just because you have said it. A wise man is always open to reason, to argument, and he never closes his ears to that, just because he has at one time made up his mind. You have heard all this evidence; you have listened to it carefully. The real question is whether these things happened, or any of them, that are vital to the case, or whether they did not happen, and whether these men entered into a conspiracy or conspiracies as charged, or whether they did not,

and whether any of the overt acts stated in the indictment as to each count—any one of them—was or was not done, and whether you believe that beyond a reasonable doubt on the evidence, and, as I have said so often, it comes down to a question of whether it is all a cock and bull story, made up by somebody for some reason or other, or whether it is a fact that has been testified to, or facts."

Recalling, as pointed out in the prevailing opinion, that no defense was interposed, and that the only evidence offered was that of the government, the language of this unrequested charge, thus given, with its commanding tone and intemperate plea, was tantamount to an advisement to the jury to convict the defendants. After excepting to this additional charge, counsel very appropriately requested the court to again charge as to the presumption of innocence, as to reasonable doubt, the rule as to credibility of witnesses, and then asked to charge, that which had not theretofore been charged, that the jurors were the sole judges of the fact, and "that every juryman has a right to his own well-founded and conscientious opinion." He said: "Does your honor care to have me repeat?" To which the court replied: "The court has already fully charged the jury on just those parts."

It is true that all of this was asked in one general request. It would have been much better if separated. But that is not fatal. Since the court undertook to deliver a charge in the language and manner described, it was needful to again call the jury's attention to the presumption of innocence and the rule of reasonable doubt, which accompanied the defendants throughout the trial. It was particularly needful to let the jurors know that they, as the sole judges of the fact, and each of them, had a right to their well-founded and conscientious opinion. Burton v. United States, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482; Nigro v. United States (C. C. A.) 4 F.(2d) 781; Stewart v. United States (C. C. A.) 300 F. 769; Allen v. United States, 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528.

The court had not charged the jury at any time, in his main charge or at the request of counsel, that every juryman had a right to his own well-founded and conscientious opinion. The animated argument, in this unrequested charge, stood alone. At this time the court did not advise the jury that they were the sole judges of the fact. The effect upon the jury is illustrated by a remark of one of the jurors in passing out, when he said: "In case we do reach a verdict sooner than most of us anticipate at this time, is there any pos-

sibility of a sealed verdict being given?" After having announced that it could not agree that night, this jury retired at 10:10, and returned at 10:30 with a verdict of guilty.

It was error to refuse the request to charge that every juryman had the right to his own well-founded and conscientious opinion, particularly in view of what had been charged. It was an error committed at a vital stage of the trial. It was harmful, as the hasty conviction, after a trial lasting from July 7th to July 27th, illustrates. Overlooking errors under the modern method of procedure in criminal cases has been fruitful in results; but, when jurors have not received the instruction which counsel was entitled to at an important time, such as this vital moment, we should not shut our eyes to this plain error.

The judgment should be reversed.