## ROBINSON et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 28, 1923.)

No. 292.

**I. Criminal law ⊜⟼1129(1)—Errors not assigned may be considered by appellate court.**

In the federal courts, and especially under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), an appellate court may consider a material error claimed in a criminal case, though not included in the assignment of errors.

**2. Conspiracy ⊜⟼44½—Intoxicating liquors ⊜⟼224—Alcoholic content of "whisky" need not be proved.**

In view of the provision of National Prohibition Act, tit. 2, § 1, that "intoxicating liquor" shall be construed to include whisky, in a prosecution for violation of the act, or for conspiracy to violate it, where the liquor in question is shown by allegation and proof to be whisky, its alcoholic content need not be proved.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Intoxicating Liquor.]

**3. Criminal law ⊜⟼762(2, 5)—Trial judge may express opinion on the facts and guilt of accused.**

In the federal courts, the trial judge is entitled to express his opinion on the facts, and the guilt or innocence of the accused, provided the jury is given unequivocally to understand that it is not bound by his opinion as to the facts, but is the exclusive judge thereof.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Ray E. Robin-

son and others. Judgment of conviction, and defendants bring error. Affirmed.

Slade & Slade, of New York City (Maxwell Slade and David H. Slade, both of New York City, of counsel), for plaintiffs in error.

William Hayward, U. S. Atty., of New York City (Elmer H. Lemon, Sp. Asst. U. S. Atty., of Middletown, N. Y., of counsel), for the United States.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. The defendants were indicted under section 37 of the Criminal Code of the United States (Comp. St. § 10201), in that they unlawfully, willfully, and knowingly conspired to violate the Act of Congress of October 28, 1919, 41 Stat. 305, known as the National Prohibition Act, in that they confederated among themselves to divert shipments of whisky in bond, and to import into the United States, and there transport, possess, and sell, said whisky for beverage purposes. Five alleged overt acts are set forth in the indictment.

The defendant Ray E. Robinson was a customs house broker. His brother, George A. Robinson, was engaged in the trucking business. The defendants Aquara, Sender, and Fagen were truckmen employed by George A. Robinson. The defendants Mead and Walsh were federal prohibition agents assigned to duty in the city of New York.

The defendants were all found guilty. Ray E. Robinson was sentenced to two years' imprisonment in the United States penitentiary at Atlanta, Ga. George A. Robinson was sentenced to a like imprisonment, and to pay a fine of $1,000. The defendants Aquara, Sender, and Fagan were each sentenced to be imprisoned in the penitentiary at Atlanta for two years. The defendants Mead and Walsh were each sentenced to a like imprisonment for two years and to pay a fine of $2,000 each.

The evidence disclosed that on April 5, 1922, the Consolidated Distilleries Company, Limited, of Canada, shipped 160 barrels of whisky, each barrel containing 60 bottles, packed in straw covers. The barrels were marked "H. M. Habana, Cuba," with a statement as to the number of bottles and the gallons. The shipment was sent to New York City over the New York Central Railroad, and was to be forwarded from New York to Cuba by the Ward Line Steamship. The Eagle Shipping Company, of which Ray E. Robinson, one of the defendants, was vice president, was notified to look after the shipment at New York City. On April 10, 1922, notice of the arrival of the car was sent by the railroad to the Eagle Shipping Company, R. E. Robinson, vice president, pursuant to an arrangement previously made. The defendant R. E. Robinson arranged for the papers on this shipment at the New York customs house. The said Robinson delivered the papers to the customs inspector, and he also delivered to the cashier's office of the carrier the papers for shipment, and paid the freight and signed "H. Harrison" for the same. On April 11, the two Robinsons and the prohibition agents, Mead and Walsh, arrived at the freight station of the railroad and the 160 barrels of whisky

were loaded on three automobile trucks brought there by the truckmen Fagen, Aquara, and Sender. When the barrels were loaded on the trucks, they contained bottles similar to those loaded into the car in Canada. The trucks so loaded left the freight station about 10 a. m. In the forenoon of the same day, and between 11 and 12 o'clock, three automobile trucks called at the plant of the Royal Seal Products Corporation, in New York, for 160 barrels of ginger ale, packed 60 bottles to a barrel. The labels upon the bottles had been removed at the request of the purchaser. The barrels were new, and had *iron* hoops, and were stenciled "H. M. Habana, Cuba." All the barrels in which the whisky was shipped had *wooden* hoops. The trucks with these barrels arrived at Pier 13, East River, between 2:30 and 3 o'clock in the afternoon of the same day and were unloaded. They were under guard continually thereafter until the next day, when it was discovered that the barrels contained bottled ginger ale, and that the ginger ale bottles had caps labeled "Royal Seal Products Corp."

The defendants Walsh and Mead accompanied the trucks from the railroad freight station to Pier 13, and the trucks were not out of their sight during that trip. The usual running time between those points is less than half an hour, or about 24 minutes, and if the jury believed the testimony presented by the government between the time the trucks left the freight station at 10 o'clock in the morning and the time they arrived at Pier 13 between 2:30 and 3 o'clock in the afternoon the conclusion was inevitable that switching of some kind had been done, and the jury were instructed that if they believed beyond reasonable doubt that barrels containing whisky were switched during that time and ginger ale barrels put in their place, and that defendants were parties to it directly or indirectly, and each with guilty knowledge and pursuant to an agreement that it should be done on April 11 in the city of New York, the government had established its case.

Under the indictment it was a necessary element of the crime charged that the defendants conspired to bring into the United States whisky or other intoxicating liquor. The term "intoxicating liquor," when used in title 2 and title 3 of the Prohibition Act, is defined in section 1 of title 2 as follows:

"The word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, * * * by whatever name called, containing one-half of 1 per centum or more of alcohol by volume which are fit for beverage purposes." 41 Stat. 307, 308.

And the indictment in this case charged that it was part of the conspiracy:

"That quantities of bottled whisky, containing more than one-half of 1 per cent. of alcohol by volume and fit for use for beverage purposes, would be shipped in bond from certain points in the Dominion of Canada, consigned through the United States to certain points in the West Indies. * * * *"

The prosecution placed on the witness stand a customs and excise examiner for the Canadian government, whose official duty it had been,

when the shipment herein involved was made, to examine the liquor. He testified as follows:

"Q. Did you make a test of the contents of any of these bottles, to know whether or not it was whisky? A. Yes, sir.

"Q. What did you do along that line? A. I picked an odd bottle, did not take any specific bottle. I tested, I suppose, three or four bottles to find out the exact strength.

"Q. Taking the bottles at random in the shipment? A. That's the idea.

"Q. What did the contents show? A. Why, it showed spirits, 24.7 net proof.

"Q. 24 per cent. alcohol? A. No; that is according to the Canadian standard. It is their way of testing."

There is no specific testimony in the record showing expressly what the difference between the Canadian and American standard is, or which expressly states what per cent. of alcohol the whisky in question contained, or whether it contained one-half of 1 per centum or more or less; and it is claimed on behalf of the defendants at the argument that it was necessary for the government at the trial to prove that the whisky contained one-half of 1 per centum or more by volume, and that no such proof was given.

[1] No claim was made in the court below that the government had failed to prove the alcoholic content of the whisky; no request to charge upon the subject was made; neither was any motion to dismiss upon that ground made; and there is no assignment of error upon that ground. Nevertheless upon the argument in this court the point was raised. The assignment of errors has been said to be the cause of action in the appellate court, and where none is filed there is nothing for the court to act upon. Henderson v. Halliday, 10 Ind. 24. It is in effect the appellant's complaint in the appellate court, and resembles the initial pleading in the lower court. 2 Encyc. of Pleading and Practice, 921. But in criminal cases the courts have not always confined themselves to the errors assigned, but have often examined the record generally in the interests of justice; and in some states by statute no assignment of errors in criminal cases is required. Id. 929.

The Supreme Court in a criminal case, Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1137 (41 L. Ed. 289) where the error committed had not been called to the attention of the trial court, said:

"And although this question was not properly raised, yet if a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it."

So in Crawford v. United States, 212 U. S. 183, 194, 29 Sup. Ct. 260, 264 (53 L. Ed. 465, 15 Ann. Cas. 392), the court again referred to this subject and said:

"In criminal cases courts are not inclined to be as exacting, with reference to the specific character of the objection made, as in civil cases. They will, in the exercise of a sound discretion, sometimes notice error in the trial of a criminal case, although the question was not properly raised at the trial by objection and exception."

Again in Weems v. United States, 217 U. S. 349, 362, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705, the matter was referred to, and the court in a criminal case declared that it would consider an assignment of error which was made for the first time in that court—the right asserted being of such high character as to find expression and sanction in the Constitution.

The act of February 26, 1919 (40 Stat. 1181 [Comp. St. Ann. Supp. 1919, § 1246]), amending section 269 of the Judicial Code, provides as follows:

"On the hearding of any appeal, certiorari, writ of error, or motion for a new trial, in any case civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions, which do not affect the substantial rights of the parties."

[2] While this statute may not be mandatory, compelling the courts to consider in all cases errors not assigned (Thompson v. United States [C. C. A.] 283 Fed. 895, 897), it certainly granted to the courts the statutory right to consider errors not assigned or specified. In view of the statute we shall consider the question raised that the record does not disclose that the whisky herein involved contained "one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes," as provided in the National Prohibition Act.

An examination of that act shows that section 1 of title 2 of that act, which section we have hereinbefore set forth, declares that the phrase "intoxicating liquor," when used in title 2 and title 3 of the act, "shall be construed to include alcohol, brandy, whisky, * * * and in addition thereto any spirituous * * * liquor * * * by whatever name called containing one-half of one per centum or more of alcohol by volume. * * *" Under this statute it is our opinion that, if an indictment alleges a violation of the act as respects "whisky" it is not necessary for the government to show that the whisky contained one-half of 1 per centum or more of alcohol by volume, or that the whisky was fit for beverage purposes. If it is shown that acts were committed with respect to liquor testified by witnesses to be "whisky," which acts the statute prohibited, the alcoholic content need not be proven. We think that the language of the act is not capable of any other construction.

The question whether it is necessary, in cases arising under this act, to show the alcoholic content of the whisky, has been before the courts in a number of cases, and so far as we are aware it has been uniformly held that the alcoholic content of the whisky need not be proven. See Strada v. United States (C. C. A.) 281 Fed. 143, 145; Albert v. United States (C. C. A.) 281 Fed. 511, 512; Singer v. United States (C. C. A.) 278 Fed. 415, 418.

The Canadian government's official in charge of whisky in bond when it is being bottled testified that he was given a requisition to deliver three different lots of whisky, and that the requisition came from the Consolidated Distilleries Company of Canada; that it called for 160 barrels, containing 60 bottles of whisky in each barrel; that he

supervised the packing, and knew that 60 bottles of whisky were packed in each barrel; that he made a test of the contents of these bottles, and knew that it was whisky; that after these barrels were placed in the car in Canada he personally supervised and counted them. The manifest issued by the Grand Trunk described the contents of the car as 160 barrels of bottled Canadian whisky; the manifest issued by the United States customs service at Niagara Falls described the contents of the car as 160 barrels of whisky; the export declaration entered at the port of New York by the Eagle Shipping Company was for 160 barrels of bottled Canadian whisky; and the order issued by R. E. Robinson as vice president upon the New York Central Railroad at New York called for the delivery of 160 barrels of Canadian whisky. In view of the testimony of the Canadian official that he supervised the bottling and tested the contents, and that it was whisky and was loaded on the car in Canada, there is sufficient proof that the liquor involved herein was in fact whisky.

[3] We find no errors in the admission or rejection of evidence, or in the charge, which require this court to reverse the judgment. There is no doubt that in the federal courts the trial judge is entitled to express his opinion upon the facts and the guilt or innocence of the accused, provided the jury is given unequivocally to understand that the jury is not bound by his opinion as to the facts, but is the exclusive judge thereof. In Dillon v. United States, 279 Fed. 639, this court expressed itself fully upon that question, and it is unnecessary to add to what we there said.

Judgment affirmed.