## LEMMONS v. UNITED STATES.
### No. 714.

Circuit Court of Appeals, Tenth Circuit.
Nov. 18, 1932.

Rehearing Denied Jan. 4, 1933.

Robert D. Charlton, of Denver, Colo. (Lewis de R. Mowry, of Denver, Colo., on the brief), for appellant.

Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo. (Ralph L. Carr, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge.

Appellant was tried and convicted of sending nonmailable matter through the mail, to wit, strychnine, from Slater, Colo., with the intention of harming the addressees. The first count charged that a package was sent to Kate Whiting at Dixon, Wyo., the second charged that a package was sent to John Lemmons at Laramie, Wyo. The offenses are alleged to have been committed on February 6, 1931. Appellant received a two-year sentence on each count; sentences to run concurrently. Defendant below appeals.

The principal ground of error relied upon for reversal is, the trial court in the charge to the jury placed undue weight and emphasis on the evidence of an expert witness who compared the addresses upon the packages with the admitted writing of defendant and delared in his opinion both had been made by the same hand, also giving his reasons for this opinion.

In argument it is contended the charge in this case was of more than usual importance, for the reason the evidence in the case was largely circumstantial, and it is contended, aside from this opinion evidence, there was but little evidence found in this record which tended to support the verdict of conviction returned by the jury. A review of the evidence adduced upon the trial will show this view is not altogether tenable.

The postmistress at Slater testified that she remembered removing one of the packages from the Lemmons' mail bag brought in by the rural carrier, and the other package bore the postmark "Slater," although the same witness did not remember seeing it.

Appellant is an educated woman, 46 years old at the time of trial. She married Matt Lemmons January 1, 1920, after meeting him at Baggs, Wyo., where she was superintendent of schools. Matt Lemmons had been married three times prior to his marriage to appellant.

The married life of the Lemmons was not happy. Appellant seems to have been abused by both her husband and members of his family. There was testimony that her husband had struck her and that John Lemmons, his son, had pleaded guilty to assault and battery for attacking appellant. Appellant had $2,000 or $3,000 at the time of her marriage which she turned over to her husband. She inherited 80 acres of Nebraska land which she had deeded to her and her husband as joint tenants. Matt Lemmons' land at Slater seems to have been conveyed to them as joint tenants also.

John Lemmons had left the ranch declaring he would never return as long as appellant was there. Also it was said that whenever appellant left the ranch a lot of Matt Lemmons' relations would come to the ranch. There was ill feeling on the part of his relations toward appellant. There was also testimony that Matt had not dealt fairly in the business affairs of the ranch.

At the time the packages were mailed, Mrs. Lemmons was the only one at the ranch. There was also testimony that appellant had made threats some time prior against the members of her husband's family.

The package described in the first count

of the indictment was addressed to Kate Whiting, Baggs, Wyo. Kate Whiting was the wife of a half-brother of Matt Lemmons. It was a box labeled "Sample-Laxative Bromo Quinine." It contained four capsules, each of which contained four grains of strychnine. Kate Whiting was sick and was expecting some medicine from Matt Lemmons' sister, but did not take the capsules, on the advice of her son, who said not to take it until they found out where it came from. It was allowed to remain around, and was finally turned over to the post office.

John Lemmons was the addressee of the other package, which contained four 4-grain capsules of strychnine in a box marked "Sample-Hill's Cascara Quinine." He turned it over to the postmaster several days later after receiving a call from his sister.

Ed Beasley, a ranch hand, was at the ranch in March, 1931. Matt Lemmons was away. Beasley testified to a conversation with appellant wherein she confessed sending some stuff to Kate Whiting and John Lemmons, and that she asked him not to testify against her. She had him send for his son to drive her to the railroad so she could go to her home in Nebraska. Appellant introduced testimony that Beasley's reputation for truth and veracity was bad. Fred Beasley, son of Ed, drove appellant to the railroad, and she took the train at Parco, Wyo. Appellant later returned to the ranch.

Post Office Inspector Wenger came to the ranch in May, 1931, and appellant printed the addresses on a piece of paper as he dictated them from the packages to her. George H. King, as an expert on handwriting for the government, testified that the same person who printed those samples addressed the packages. Appellant took the stand, denied making threats, denied sending the packages, denied the confession to Beasley and statements to his son, and denied all the other damaging evidence against her. She related in detail her married life and the trouble with Matt Lemmons and his relatives.

The sole assignment of error is the court's instruction to the jury in regard to the handwriting expert. In the charge of the court to the jury is contained the following: "You have had, first, the testimony of Mr. King, the handwriting expert, a man who has devoted his lifetime to comparisons and studies of handwritings and forged documents. He took the addressees or writing or printing, as it is called, on those packages and compared them with some writing which the defendant admits she made; no question about

that; and he says that, based on his experience and his study as an expert of these questioned documents, that the same party wrote both; in other words, that this defendant addressed those packages, that they are in her handwriting. He went into detail and gave very elaborate reasons why in his belief she addressed those packages. There was nobody called by the defendant, except the defendant, to say that it was not her handwriting. She denied it emphatically. She makes an issue of that. The testimony of experts, qualified the way Mr. King is, is entitled to your very serious consideration. In judging the values you must take into consideration the experience, the time he has given to this work, and the reasons or alleged reasons he stated why the handwritings were the same, but in final analysis, gentlemen, the question of whether this defendant addressed those boxes is for you to decide, and the evidence of Mr. King is simply like all the other evidence in the case, to aid you in deciding that question, and it is within your province, as sole judges of the fact, to give it such weight, if any, as you, after careful consideration, think it is entitled to."

Appellant offered on this subject the following instruction: "In this case the witness George H. King was permitted to testify as an expert, giving his opinion as to the similarity of handwriting or printing. This class of testimony is proper and competent concerning matter involving special knowledge or skill or experience upon some subject which is not within the realm of ordinary experience of mankind and which requires special research and study to understand. The law allows those skilled in that special branch to express opinions and to say whether or not, according to their experience and research, a fact may or may not exist; but, it is entirely within the province of the jury to say what weight shall be given to them. The jurors are not bound by the testimony of an expert. His testimony is to be canvassed as that of any other witness. Just so far as his testimony appeals to your judgment, convincing you of its truth, you should adopt it. But the mere fact that the witness was called as an expert and gave opinion upon a particular point does not necessarily obligate the jury to accept his opinion as to what the facts are in the face of the testimony of a witness or witnesses claiming to have actual knowledge of the facts."

Formerly an exhibit such as the one introduced through the post office inspector would not have been admissible for the purposes of comparison because it was not in the case

for other purposes. Withaup v. U. S. (C. C. A. 8) 127 F. 530, 535. But there is now a statute, 28 USCA § 638, as follows: "In any proceeding before a court or judicial officer of the United States where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding, to prove or disprove such genuineness."

The government made out a strong case against appellant. There is much testimony as to the treatment of appellant by the Lemmons family, which is practically admitted, which lends credence to appellant's claim that she was "framed" by them, and this court should see that she got a fair and impartial trial.

In The Conqueror, 166 U. S. 110, 133, 17 S. Ct. 510, 519, 41 L. Ed. 937, the court laid down the rule as to the weight to be given to expert testimony: "In short, as stated by a recent writer upon Expert Testimony, the ultimate weight to be given to the testimony * * * is a question to be determined by the jury; and there is no rule of law which requires them to surrender their judgment or to give a controlling influence to the opinions of scientific witnesses."

The question was as to damages as the result of the detention of a yacht. In Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028, the question was the value of attorney's fees. The court's opinion is to the effect that it is the province of the jury to weigh the testimony of the experts by reference to the nature of the services, time occupied in their performance, and that they should at the same time apply their own experience and knowledge, and that, while great weight should always be given to the opinions of those familiar with the subject, they are not to be blindly received; they should control only as they are found to be reasonable. While those cases, and many others, emphasize that it is for the jury to determine the ultimate weight to be given to such testimony, they do say that great weight should be given to the testimony of experts because of their special knowledge and training.

However, when it comes to experts on handwriting, many courts have looked upon their testimony as being particularly unreliable; for example, Hardy v. Harbin, 154 U. S. 598, 605, Appx. and 14 S. Ct. 1172, 22 L. Ed. 378, a case where there was expert testimony by men skilled in the comparison of handwritings. Appellant cites many cases where the courts regard such testimony as weak, unsafe, and unsatisfactory. Many of the courts seem to feel that they have been many times imposed upon by experts on handwriting.

The court has the right to properly sum up the facts and express an opinion upon them, but the jury should be left free to express their independent judgment on the facts, Coulston v. U. S. (C. C. A.) 51 F.(2d) 178, 180; Minner v. U. S. (C. C. A.) 57 F.(2d) 506, 513; also to express an opinion on the weight, force and effect of the evidence, Coulston v. U. S., supra.

The issue here really is whether the evidence was fairly and accurately stated, or whether the court unduly emphasized the testimony of the handwriting expert, which was unfavorable to the appellant. The court called the jury's attention to the fact that appellant denied that she addressed the packages, told the jury that in the final analysis it was for them to say whether appellant addressed the packages, and told them it was for them to say what weight was to be given the expert's testimony. This court cannot substitute its judgment for that of the jury on weight and credibility of testimony. Terry v. U. S. (C. C. A.) 51 F.(2d) 49.

While perhaps it is true, as contended by appellant, the evidence of the expert King was given more prominence than it merited, under all the circumstances of this case, we do not find the charge of the court was prejudicial error. It must be borne in mind, as held by the Eighth Circuit in Hamilton v. Empire Gas & Fuel Co. (C. C. A.) 297 F. 422, 430: "The decision as to the qualification of an expert witness is peculiarly within the province of the trial court, and should not lightly be set aside. The trial court has a reasonable discretion in passing upon such qualification which will be respected by the Appellate Court in the absence of a clearly erroneous ruling. Chateaugay Co. v. Blake, 144 U. S. 476, 484, 12 S. Ct. 731, 36 L. Ed. 510; Inland Co. v. Tolson, 139 U. S. 551, 559, 11 S. Ct. 653, 35 L. Ed. 270; Chautauqua Institute v. Zimmerman, 233 F. 371, 147 C. C. A. 307; Gillespie v. Collier, 224 F. 298, 139 C. C. A. 534; Jordan v. Adams Co., 231 Mass. 186, 120 N. E. 654; 11 R. C. L. 574."

Again, it must have been almost self-demonstrative to the minds of the jurors who were permitted to examine and compare the writings and form a judgment for themselves that the opinion of the expert was well founded in fact.

612

We are convinced the jury reached the true result in this case, that no prejudicial error is to be found in this record, and that the judgment of conviction must be affirmed.