## UNITED STATES v. MELTZER.
## SAME v. KLEIN.

### Nos. 6694, 6695.

Circuit Court of Appeals, Seventh Circuit.

Dec. 20, 1938.

740

Frank A. Darnieder and Jacob S. Rothstein, both of Milwaukee, Wis., for appellants.

B. J. Husting, U. S. Atty., and E. J. Koelzer, both of Milwaukee, Wis., for appellee.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

EVANS, Circuit Judge.

Defendants were indicted, tried, and convicted of "corruptly and by threats" endeavoring "to influence and intimidate * * * a witness who was then and there * * * appearing before a United States Commissioner," in proceedings then pending for the removal of two named individuals from Wisconsin to South Dakota.

Three individuals, Ray Trawczynski, E. W. Klein, and Sam Meltzer, were indicted in two counts, in one for intimidation of a witness, and in the other count, for endeavoring to obstruct the due administration of justice. 18 U.S.C.A. §§ 241, 245. The defendant Trawczynski pleaded guilty and testified for the Government. The jury found the other two, guilty on the first, and not guilty on the second count. Upon the pronouncement of sentences of imprisonment and fines, defendants each separately appealed.

Briefly, the Government's testimony tended to show that defendants were professional bondsmen. They had furnished bail bond for T in a prior removal proceeding, begun August 5 and dismissed September 9, for lack of evidence. T was rearrested and new removal proceedings begun in September. Defendants again signed his bail bond, this time without charge, inasmuch as he had paid them $200 for signing the earlier bond.

Klein and Meltzer became apprehensive, so they asserted, lest T would be removed, in which case they would have to furnish a second, a removal bond, for T's appearance in South Dakota. It was for this reason, they say, that they contacted one Mrs. Lage to ascertain whether her husband, an inmate of Leavenworth Penitentiary, was to testify against T on the removal hearings.

It is the Government's contention that Klein and Meltzer contacted Mrs. Lage for the purpose of unlawfully inducing her, through bribes, to persuade her husband not to testify; that they promised her $100 and her expenses if she would go to Winona, Minnesota (where Lage would be taken before coming to Milwaukee), and speak to her husband, advising him that he should refuse to testify for the Government to facts which would involve him in a crime. They offered to procure counsel for her husband for his protection, and she mentioned an attorney who had acted for her husband. Defendants saw him immediately and were told that a Government witness needed no counsel to represent him. The prosecution also produced witnesses, Mr. and Mrs. T., who testified that they paid money to "fix the case" and have it dismissed. The court ordered the testimony of T as to the payment of $1200 to "fix the case" stricken on defendants' motion. Thereby support for the charges made in the second count of the indictment failed. It was the Government, therefore, not the defendants, who suffered by this ruling.

Meltzer had signed criminal bail bonds in about 3,000 instances, and Klein, in about 30. Klein was in the furniture business and acted as bail bondsman at Meltzer's request, the latter being morally bound to reimburse him. Klein testified he did not know that he could have surrendered a principal of whom he had become apprehensive; Meltzer said he surrendered his principals only upon a finding of guilt and sentence, and that he kept a close eye on them and their cases.

At the meeting at Mrs. Lage's home, her brother-in-law, Oscar Ellefson, a telephone lineman, was present. He corroborated Mrs. Lage's testimony in all respects.

The evidence was sufficient to sustain a conviction.

The Government's proof was squarely denied by the defendants, however, and this situation necessitated a submission of the case to a jury under proper instructions. Defendants' assignments of errors are directed to rulings made during the trial, and are more particularly directed to the court's instructions. Several of these assignments

are without merit and will not be discussed, but at least three of them raise questions which must be separately considered.

▉▉ Defendants argue that inasmuch as they were acquitted on the second count, conviction on the first count can not be sustained because of inconsistency. This contention, we reject, first because there is no inconsistency where the offenses charged in the two counts of the indictment are defined as separate crimes by two separate sections of the statute. They are not similar. One may be guilty of obstructing justice, although he did not attempt to improperly influence a witness.

▉ Moreover, even though there be apparent inconsistency in the verdict in a criminal case, it affords no valid ground for setting aside the verdict on the count whereof the accused was found guilty, provided there is substantial evidence to support the verdict. Dunn v. U. S., 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Carrignan v. U. S., 7 Cir., 290 F. 189; Nadl v. U. S., 7 Cir., 6 F.2d 574; Chiaravalloti v. U. S., 7 Cir., 60 F.2d 192; Davey v. U. S., 7 Cir., 208 F. 237.

More serious are the two assignments of error which deal with the instructions of the court to the jury. One such assigned error arose when an objection by defendants' counsel was made to the correctness of the Government counsel's statement of the evidence. The other occurred later in the instructions dealing (a) with the way one who has signed bail for another may relieve himself of his bail bond obligation, and (b) with the weight of testimony of witnesses unfamiliar with court proceedings and court atmosphere, as compared to the credibility of witnesses who are intimate with court room proceedings.

The record discloses the following proceedings during the argument of counsel to the jury. The Government's attorney was addressing the jury. He said, "What right did Meltzer have to go to see Mrs. Lage and say to her that her husband who was a government witness, that her husband should stand on his constitutional rights?"

"Mr. Rothstein: Well, if the Court please, I have to object to the statement of counsel for the Government that Mr. Meltzer said that: he didn't say that.

"Judge Barnes: Constitutional rights haven't anything to do in this case; don't be misled by the term; just turn it out of your minds; it's dust being thrown into your eyes; that's all that 'constitutional rights' has to do in this case."

Exceptions were duly taken to the court's observation.

Defendants also complain of the following instructions:

"Now, what is the relationship between a bondsman and a defendant? I'll tell you what the relationship is. When a defendant is arrested, when a defendant is charged with a crime or an offense against the United States, and is arrested, he is in the custody of the United States; he is in the custody of the United States Marshal, and when he is in the custody of the United States Marshal, he is in the custody of the United States; and if he desires to be released on bond, released from that custody, if he wants to get out of jail, he seeks a bondsman, and the bondsman signs his bond, and then in contemplation of law, the bondsman becomes the custodian of the defendant; he is his jailer. The defendant from the signing of the bond for him, is released by the United States Marshal, and then the bondsman becomes the jailer of the defendant; and, if that jailer, that bondsman, feels himself insecure; if he feels that his defendant is going to jump his bail, his bond; all that he has to do is to bring him into court, and say, Your Honor, I desire to surrender this defendant; that's all he has to do; and the Judge says to the Marshal; Mr. Marshal, take the defendant into custody; whereupon, the Marshal takes the defendant back into the custody of the United States, and the bondsman is released of his liability on the bond.

"If this defendant Klein felt himself insecure, or, if this defendant, Meltzer, felt that his friend, his business associate, was insecure on the bond, all that Mr. Klein had to do was to say to Mr. Trawczynski come with me over to the United States Commissioner, and if Mr. Klein was not strong enough physically to take Mr. Trawczynski over to the United States Commissioner, all that he had to do, was to call to his assistance someone who was strong enough physically to take the defendant Trawczynski over to the United States Commissioner, and after having him brought there; all he had to say is, Mr. Commissioner, I desire to surrender the defendant Trawczynski; whereupon, the Commissioner would say, Mr. Marshal, take the defendant Trawczynski into custody; and Mr. Klein would, thereupon, have been released of his liability upon his bond; and, if Mr.

Meltzer felt that his friend, or business associate, Mr. Klein, was insecure, in that Mr. Trawczynski might jump his bond; all that Mr. Meltzer had to do was to say to Mr. Klein, surrender the defendant Trawczynski and terminate your liability on the bond.

"Now, gentlemen, it is inconceivable, that a man, who has written as many bonds as Mr. Meltzer or Mr. Klein did not know, —it is just inconceivable that all they had to do with the defendant Trawczynski was to surrender him. But, what did they do? They began having conversation with Lage's wife. Now, what honest purpose could there be for those conversations? What honest purpose could there be for those conversations?

"It seems to me that there couldn't be any honest purpose for those conversations. If they were afraid of their security on his bond, all they had to do was to surrender the defendant Trawczynski. * * *"

"In considering the weight to be given to the testimony of these two defendants, I suggest that you take into account their experience about the courts; are they accustomed to be in and about courts. There is one defendant here, Meltzer, who says that he has written about three thousand bonds; and there is the other defendant, Klein, and he says that he has written about thirty bonds in this court; consider whether they are accustomed to be in and about courts. Are they likely to be embarrassed when they are in court; are they likely to be embarrassed when they are on the witness stand? When you consider the weight of the testimony and the credibility of the witnesses, as I said to you before, the question of credibility of witnesses, and the weight to be given to their testimony, is a question for you to determine. That is a question for you and for your judgment; and, if your judgment disagrees with mine, it is your duty to follow your own judgment.

"But that brother in law of Mrs. Lage, Oscar Ellefson; he looked to me and he seemed to me like an honest man, I can't see any reason why he, with his responsible position, with the Wisconsin Telephone Company, why he should be here telling anything other than the truth. *He is not accustomed to courts. Maybe this was the first time that he has ever been in a court, and he meticulously tried to tell the truth;* therefore, he was slow in his testimony; his mind doesn't operate very rapidly, at best; he works out on construction jobs; he seemed to me like an honest man; but if your judgment of him is different, it is your duty to follow your judgment; because that is the law."

To ascertain the propriety of a court ruling or to determine the probability or possibility of prejudicial error in an instruction, it is ordinarily necessary to scrutinize the fact background to which it applies. This is so in the instant case. The ruling complained of seemingly bears no relation to the objection made by the defendants' counsel who merely challenged the accuracy of the Government counsel's statement of evidence.

We are inclined, however, to view what, literally, is the ruling on an objection, as an instruction to the jury. Even so construed, it can not be sustained.

The different functions of the court and the jury in a trial of criminal cases have been the subject of much discussion, academic, as well as judicial. The line of demarcation between them has been defined in many cases.

It is our opinion that the firmly established Federal practice in jury trials, of the court's analyzing the fact controversy, dissecting the evidence, and commenting upon the same, and even giving opinions as to the merits of the case, when it is exercised only in exceptional cases and it is made clear that the court's opinion must give way to the jury's on matters of fact, has long been recognized as an invaluable pillar in a judicial system which provides for, and in some instances necessitates, trial by court and jury. The wisdom of the practice has been demonstrated by experience.

Herewith, we set forth a few of the more recent Supreme Court pronouncements which recognize the right of the trial judge to comment on the evidence and even to give expression of his opinion of defendants' guilt* in some instances, but only when it is made clear that such expressions are not binding on the jury. From such decisions the trial courts have been encouraged to exercise their right and privilege so to instruct and advise juries. The exercise of this judicial authority, in the writer's opinion, should be encouraged, not discouraged.

We also quote from the same authorities the pronouncements, which mark the

---

*The court may, in appropriate cases, also express the opinion that the accused is innocent.

boundaries beyond which courts may not go without improperly invading the province of the jury.

Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321: "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. * * * In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination."

United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381: "A federal judge may analyze the evidence, comment upon it, and express his views with regard to the testimony of witnesses. He may advise the jury in respect of the facts, but the decision of issues of fact must be fairly left to the jury."

"Since Sparf v. United States, 156 U.S. 51, 715, 15 S.Ct. 273, 39 L.Ed. 343, * * * It is the duty of the jury to apply the law given them by the presiding judge to the facts which they find." Horning v. District of Columbia, 254 U.S. 138, 41 S.Ct. 53, 54, 65 L.Ed. 185. "The judge is without power to direct a verdict of guilty although no fact is in dispute." Horning v. District of Columbia, supra. "The judge * * * may advise; he may persuade; but he may not command or coerce." (From dissenting opinion on a point not challenged in the majority opinion.)

Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321: "This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. * * * This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided'; that 'deductions and theories not warranted by the evidence should be studiously avoided.'"

Quercia v. United States, supra: "It is important that hostile comment of the judge should not render vain the privilege of the accused to testify in his own behalf."

United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381: "Although the power of the judge to express an opinion as to the guilt of the defendant exists, it should be exercised cautiously and only in exceptional cases."

The trial judge may analyze the evidence, but he may not add thereto and base his instruction upon the addition. Quercia v. U. S., supra.

In Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91, the court propounded questions indicating the existence of a belief in the defendant's guilt. The court said, page 123, 15 S.Ct. page 38: "The illustration was put in the form of a question, and no affirmation was made as to the intent that must be presumed therefrom. *Even if it contained an expression of opinion, such expression is permissible in the federal courts.*"

Pronouncements of like character may be found in the opinions of inferior Federal courts. They are all in accord. [1]

[1] Marino v. U. S., 9 Cir., 91 F.2d 691, 113 A.L.R. 975; Hartzell v. U. S., 8 Cir., 72 F.2d 569; Baldwin v. U. S., 9 Cir., 72 F.2d 810; Lewin v. U. S., 1 Cir., 62 F.2d 619; U. S. v. Notto, 2 Cir., 61 F.2d 781; Lemmons v. U. S., 10 Cir., 62 F.2d 608; Louviers v. U. S., 9 Cir., 62 F.2d 163; U. S. v. Frankel, 2 Cir., 65 F.2d 285; Reger v. U. S., 10 Cir., 46 F.2d 38; Malaga v. U. S., 1 Cir., 57 F.2d 822; Palno v. U. S., 8 Cir., 58 F.2d 111; Coulston v. U. S., 10 Cir., 51 F.2d 178; White v. U. S., 1 Cir., 30 F.2d 590; Dwyer v. U. S., 2 Cir., 17 F.2d 696; Eddington v. U. S., 8 Cir., 24 F.2d 50; O'Shaughnessy v. U. S., 5 Cir., 17 F.2d 225; Allen v. U. S., 7 Cir., 4 F.2d 688; Weare v. U. S., 8 Cir., 1 F.2d 617; Russell v. U. S., 6 Cir., 12 F.2d 683; Buchanan v. U. S., 8 Cir., 15 F.2d 496; Chafin v. U. S., 4 Cir., 5 F.2d 592; La Rosa v. U. S., 4 Cir., 15 F.2d 479; Weiderman v. U. S., 8 Cir., 10 F.2d 745; Carney v. U.

Quotations from the opinions of the different Circuit Courts of Appeal which have ruled directly on the right of the trial court to express an opinion as to the guilt of the accused are herewith submitted:

Second Circuit Court of Appeals, Robinson v. United States, 290 F. 755, 760:

"We find no errors * * * in the charge, which require this court to reverse the judgment. There is no doubt that in the federal courts the trial judge is entitled to express his opinion upon the facts and the guilt or innocence of the accused, provided the jury is given unequivocally to understand that the jury is not bound by his opinion as to the facts, but is the exclusive judge thereof."

Fourth Circuit, Morse v. United States, 255 F. 681, 682:

"In the following concluding instruction, it is contended, the District Judge went beyond his province in expressing his opinion of the guilt of the defendant: 'You are the sole judges of the facts of the case, and should determine the same after due consideration of all the evidence, in the light of attending circumstances * * * and in so doing you should act upon your own independent judgment, uninfluenced by what others, including the court, may think or say. But I would be derelict in my duty if I did not say to you that, from my standpoint and viewpoint, this testimony irresistibly and irrefutably points to the absolute guilt of these defendants.' The opinion that the accused was guilty was strongly expressed, but the expression was accompanied by an equally strong statement that the jury should exercise their own independent judgment * * * . Since the ultimate conclusion was left to the jury, there was no error in the instruction. * * *"

Fifth Circuit, O'Shaughnessy v. U. S., 17 F.2d 225, 228:

"While it is permissible for a federal judge, presiding in the trial of a criminal case, to comment on the evidence and to express his conclusions as to the guilt or innocence of the accused, he is under a duty to be impartial in doing so, not to make his comments in favor of or against one side only, and, if he states the evidence, he should state it fairly and accurately, both that which is favorable to the accused and that which is unfavorable." (Here it was held the instruction was too strong.)

Sixth Circuit, Stroud v. U. S., 2 F.2d 658, 659:

"In his charge the judge made the statement * * * 'In other words, gentlemen, I think the defendants, all three, are guilty; but that is just my opinion about it. You gentlemen are not to be influenced by it, and must determine it for yourselves, upon your own opinion about the guilt or innocence of the defendants.' * * * As to the court's expression of opinion—the question is whether it falls within the Wallace Case [6 Cir.], 291 F. 972, where this court held that a charge which four times referred to the defense as a subterfuge was a disparagement of the defense and not a judicial discussion of the issues, or whether it is ruled by the Tuckerman Case [6 Cir.], 291 F. 958, where the same court held the charge not to violate the rule requiring that the judge's comment, by way of expression on the facts, be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of the facts, may be left free to exercise their independent judgment. We think the instant case in that respect falls within the Tuckerman Case. The judgment of the District Court is affirmed."

S., 9 Cir., 295 F. 606; Keller v. U. S., 7 Cir., 168 F. 697; Wolff v. U. S., 1 Cir., 299 F. 90; Caudle v. U. S., 8 Cir., 278 F. 710; Dillon v. U. S., 2 Cir., 279 F. 639; Roth v. U. S., 6 Cir., 294 F. 475; Hart v. U. S., 3 Cir., 84 F. 799; Sylvia v. U. S., 6 Cir., 264 F. 593; Allis v. U. S., 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; Kettenbach v. U. S., 9 Cir., 202 F. 377; Endleman v. U. S., 9 Cir., 86 F. 456; Stokes v. U. S., 8 Cir., 264 F. 18; Hurwitz v. U. S., 8 Cir., 299 F. 449; DeJianne v. U. S., 3 Cir., 282 F. 737; Johnson v. U. S., 2 Cir., 270 F. 168; Shea v. U. S., 6 Cir., 251 F. 440; Perkins v. U. S., 4 Cir., 228 F. 408; Tuckerman v. U. S., 6 Cir., 291 F. 958; Wallace v. U. S., 6 Cir., 291 F. 972; Wolf v. U. S., 6 Cir., 292 F. 673; Foster v. U. S., 4 Cir., 188 F. 305; Morse v. U. S., 4 Cir., 255 F. 681; Savage v. U. S., 8 Cir., 270 F. 14; Robinson v. U. S., 2 Cir., 290 F. 755. For notes and cases see 95 A.L.R. 811.

These cases, for the most part, hold squarely that the trial court may express his opinion as to the guilt of the accused.

Seventh Circuit, Pfaff v. United States, 85 F.2d 309, 311:

"The other circumstance lies in the support which the record offers for the court's allegedly prejudicial remarks. Judges are not automatons. They are expected to guide the jury to intelligent action. Their duty is not fulfilled unless they help that body, i. e., guide its deliberations. To do so, judges must take charge of the trial. They cannot 'stand by.' * * * Judges presiding in Federal courts may comment upon the evidence and express opinions respecting the effect of such evidence, even of guilt or innocence of the accused. * * * There are instances when the duty to do so is clear. * * *"

Eighth Circuit Court, Hartzell v. U. S., 72 F.2d 569, 586:

"Now, with that caution I will say to you, gentlemen, that I have listened to all this evidence as intently as you have I think, and in the opinion of the court the government has established the facts which ought to convince reasonable men beyond a reasonable doubt, and taking the evidence as a whole I think the government has established the allegations of these several counts that remain in the indictment.' This instruction is vigorously assailed as erroneous and prejudicial. * * * In the instant case, there is no question of intent or wilfullness, and the evidence may be said to be undisputed. The expression of an opinion under such circumstances is little more than advising the jury that the facts as proved are sufficient in law to constitute the offense charged. * * * In the instant case, according to the undisputed evidence, a fraud has been carried on for years, and these undisputed facts constitute a violation of the statute with which the defendant was charged, and we are of the view that it was proper for the court, in its discretion, so to advise the jury. * * * It is impossible that any inference of innocence or honesty can be predicated upon this record, and if, as is stated in the Murdock Case, the trial judge has the power to express his opinion as to the guilt of the defendant, it would seem that this is a proper case for the exercise of that discretion."

Ninth Circuit Court, Endleman v. U. S., 86 F. 456, 462:

"In charging the jury the court said: 'The federal courts allow the judges some-

times to give an opinion on the evidence. I gave my judgment to the other jury, and I will give it to you. I do not see any way that these defendants can be acquitted. Notwithstanding, I charge you that you are the judges of the evidence, and from that evidence it is for you to say whether or not they, or either of them, are guilty.' It is objected that the court had no right to express an opinion as to the guilt or innocence of the defendant. The language used by the court, as to the guilt of the defendant, is certainly not to be commended. While it is true that the federal judges have the right, in criminal cases, to express to the jury their opinion as to the guilt or innocence of one accused of crime and on trial, and advise them as to the facts of the case, still the supreme court has repeatedly admonished the trial courts that this should be done with great care and circumspection. * * * While the remarks of the learned judge are subject to criticism, and we are compelled to express our disapproval of it, still as no rule of law was incorrectly stated to the jury, and the matters of fact were ultimately submitted to the determination of the jury, we do not consider that it was reversible error."

Language of like purport appears in the opinions of the first and third circuits. They speak of the *merits* of the case instead of the *guilt* of the accused.

First Circuit Court, Wolff v. U. S., 299 F. 90, 92:

"It is to the portion of the charge contained in the last paragraph, wherein the presiding judge expressed his opinion, that the respondents assign error. What the court was seeking to impress upon the minds of the jury was that the concealment of assets by Wolff would not be a sufficient ground for finding the respondents guilty; that to do so, they must find that he and Sontag conspired to conceal the assets from his trustee; and while the court expressed the opinion that the evidence appeared to be strong that Wolff had made some effort to conceal assets, it distinctly informed the jury that its 'opinion was not binding upon (them) at all.' Under the federal rule it is not error for a judge to express his opinion on the facts provided he gives the jury to understand that they are not bound by his opinion but are free to exercise their own independent judgment."

746

See, also, Lewin v. U. S., 1 Cir., 62 F. 2d 619, 620:

."The trial judge took no such view of the evidence. He submitted the point to the jury with a strong intimation of his opinion about it. They were, however, clearly and strongly cautioned not to accept his views about facts unless they agreed ,with him. If he thought the defendant's contention plainly unmeritorious, he was certainly within his right, and probably within his duty, in saying so."

Third Circuit Court, DeJianne v. U. S., 282 F. 737, 740:

"In criminal cases the trial judge may not direct the jury to find the defendant guilty. * * * But he may sum up the facts and express his opinion upon them, if he leaves their ultimate determination to the jury and does not misstate any rule of law. * * * In this case, he did not direct the jury to find the defendant guilty. He merely expressed his opinion of the evidence, but allowed the jury finally to determine the facts. * * *"

The exercise of this authority in actual cases, the real test of its value, is not free from difficulties of a practical character. To advise, and thereby to aid a jury in correctly deciding a fact issue without obstructing the full, free exercise of the mental processes of said jury is a difficult task which calls for skill of an unusual character. Few judges can. safely proceed without carefully and laboriously preparing the instructions in advance and even revising the same after such careful preparation. Notwithstanding the difficulties attending the preparation and delivery of the court's charge, the practice has been mastered, and juries are helped by the instructions and at the same time have been the sole triers of the fact.

In brief, it may be said that the theory of the Federal practice is that a jury should have, in both civil and criminal cases, the benefit of the light of a judicial lantern in its search for the truth (through an honest witness), but the light may only be used to assist the jury in *its search*.

To be helpful the light should be illuminating, not blinding, dazzling, or diverting. Where stories of witnesses and parties are sharply and irreconcilably conflicting and the jury is searching the motives, looking for corroborations, inconsistencies, etc., in order to ascertain the truth, it is inevitable that they should arrive at a point where the road branches to the left and to the right. If the director of the search, the officer with the judicial lantern, throws its light down one road and diverts the searchers from the other, the light defeats rather than assists the inquiry.

Sound judgment, and decades of experience, both, support the conclusion that while light may be occasionally dazzling and blinding, on the whole it is far more aidful than hurtful to a searcher who is groping either for something hidden or lost, or for the more illusive object,—the correct answer to a fact controversy where stupidity and cupidity; ignorance and prejudice, truth and falsehood,/ fact and fancy, are all mingled and serve to complicate a disputatious, fact situation.

My conclusion is that it is unsound to test the wisdom, or the existence of a power, a duty or a privilege by the possibility of its misuse or abuse, or because its use is reserved for rare, for extraordinary cases. No dissenting judicial utterance has before questioned the existence of this authority of a Federal court. Nor need I add that in my opinion the existence of authority imposes a duty on the court to exercise it in proper,—to-wit exceptional, cases.

Applying the foregoing to the instant case our attention is at once directed to the inquiry: Were the jurors left free to determine the fact controversy? Where the testimony upon which the prosecution depends is flatly contradicted by the accused and the court directs the jury to dismiss the accused's version from their minds, we have the equivalent of a directed verdict.

The court may not have accepted defendants' testimony. It would be unnatural for a judge who hears the evidence not to entertain definite conclusions thereon. Evidently the judge in this case disbelieved the accused. But what of the jury? They may have given less weight to the stories of the government witnesses, one or two of whom were serving penitentiary sentences. Not for that reason, however, were their statements to be rejected any more than the story of the defendants. whose deep interest in the outcome reflected upon their credibility. But the fact remains that A may look with less favor than B upon testimony of interested parties while B may completely reject the testimony of men who are in the penitentiary and anxious to be free.

It was a ripe case for the free exercise of the judgment and the experience of a

jury. Perhaps the jury might have rejected the court's instructions as to the law. Experience has demonstrated that they sometimes do. If they did, they were not performing their duty nor complying with their oath. But an affirmance of a judgment can hardly be predicated on the assumption that the jury did not accept the law as pronounced by the court.

The vice of the instruction lies in its direction to dismiss facts which the jury might have considered important and determinative of criminal misconduct.

The instruction also carried the suggestion that the factual controversy was in truth to be determined as a legal matter.

There is still another criticism which can not be ignored. Accepting the instruction as an expression of the court's opinion of the evidence, without any statement of the jury's right to reject it, the court, possessed of great influence with the jury, should not by word or act indicate contempt or scorn of a defense, not impossible or obviously false. An expression of opinion may be made without the accompaniment of derision.

Confirmation of this impression is to be found in the quotations from other portions of the charge. When the court told the jury that a government witness was in his opinion telling the truth, and his reason therefor was that he was a stranger in the courts; that this was perhaps the first time he had ever been in a court, whereas the defendants were accustomed to be in and about the courts, it was, as in the Quercia Case, supra, adding to the testimony of the sworn witnesses. It may have been the court's opinion, based upon its experience, that men and women who have great familiarity with courts are less truthful and more unreliable and more likely to falsify than those who have not had such experiences. Even so, such factual experiences should be proven on the trial like any other fact.

Perhaps such testimony would be disputed by other witnesses who would have as much, or more faith in the testimony of court officials and those whose business takes them frequently into court as they have in the story of witnesses who are strangers to court practice and procedure. As stated in the case of Quercia v. U. S., supra, where the trial court told the jury that the witness wiped his hands during his testimony and that "is almost always an indication of lying" and therefore he believed "that every single word * * * except when he agreed with the Government's testimony, was a lie," the court was adding to the evidence. "The trial judge did not analyze the evidence; he added to it, and he based his instruction upon his own addition * * * but in a sweeping denunciation repudiated as a lie all that the accused had said in his own behalf which conflicted with the statements of the government's witnesses. This was error * * *."

The judgment is reversed, and the cause remanded for a new trial.

MAJOR, Circuit Judge.

I concur in the result, but not in all that is said without some explanation. I refer to that paragraph in the opinion relating to the established Federal practice in jury trials concerning the court's authority, and particularly the statement, "and even giving opinions as to the merits of the case, when it is exercised only in exceptional cases and it is made clear that the court's opinion must give way to the jury's on matters of fact." Assuming that an "opinion upon the merits" has reference to the ultimate issue to be presented to the jury, my conviction to the contrary, is of such a nature I feel obliged to record my position. In doing so I recognize that the weight of authority in courts of inferior jurisdiction sustains the proposition and it is a matter of sincere regret that after much thought I am unable to reconcile my views with those of Judge Evans and the numerous other jurists who have expressed themselves to the same effect. A study, however, of the various opinions of the Supreme Court leads me to believe, as I shall attempt to point out, that it is a very dubious question as to whether that court has given its approval, and I am unwilling to go further in recognition of the principle than is there required.

The Sixth Amendment of the Constitution, U.S.C.A. Const. Amend. 6, provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury by the state and district * * *." To me the expression of an opinion by the trial judge upon the merits of the case, and upon the issue which the jury is to determine is plainly an abridgement of that right, and the damage can not be overcome by admonishing the jury that they are not bound by it, but notwithstanding such opinion, it is their

duty to form their own opinion from the facts and law in the case. This is especially true in a criminal case where the Judge expresses his opinion that the defendant is guilty of the offense charged. To my mind such procedure is productive of the following situation: Government's counsel says to the jury, "The evidence presented proves the defendant's guilt"; Defendant's counsel says, "The evidence is insufficient to establish such guilt," and the Judge says, "My opinion coincides with that of the Government. I likewise give it to you as my opinion that he is guilty." How any defendant could have a fair and impartial trial after such a proceeding is beyond my ability to comprehend. Under such circumstances the right of trial by jury becomes an idle and useless ceremony. The verdict is not their independent judgment but represents a judgment altered and modified to conform to the court's desire in the matter. But it is said this power must only be exercised in "exceptional cases." Why confine it to "exceptional cases"? Who is to determine the "exceptional case" and if its use in such cases is wholesome, why would it not be equally so in all cases?

■ Upon an expression by the court of its opinion as to the issue which the jury is to determine, the judicial lantern so aptly described in the opinion immediately ceases to be such and becomes a beacon light, so dazzling and blinding that there is little, if any, opportunity for the jury to follow any road except that shown by this guiding light. The danger of the exercise of such power and the difficulty confronting an appellant tribunal where it has been used is illustrated in the case now before us. I join in the opinion of reversal for the reason the remarks of the trial court were such, in my judgment, as to preclude a fair and impartial trial, and yet to my mind such remarks were far less damaging than if the court had expressed an opinion that the defendants were guilty.

The latest Supreme Court case relied upon as authority for the power of the Judge to express an opinion is that of United States v. Murdock, 290 U.S. 389, 54 S. Ct. 223, 78 L.Ed. 381, from which a quotation is found in the opinion. In order to ascertain just what the court held in this respect, however, it seems essential to quote more than that found in the opinion. On page 394, 54 S.Ct. on page 225, it is said:

"Although the power of the judge to express an opinion as to the guilt of the defendant exists, it should be exercised cautiously and only in exceptional cases. Such an expression of opinion was held not to warrant a reversal where, upon the undisputed and admitted facts, the defendant's voluntary conduct amounted to the commission of the crime defined by the statute. Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185. The present, however, is not such a case, unless the word 'willfully,' used in the sections upon which the indictment was founded, means no more than voluntarily."

It will be noted that the only authority cited is the Horning Case, and there the court charged the jury (page 138, 41 S.Ct. page 54):

"* * * that in a criminal case the Court could not peremptorily instruct them to find the defendant guilty but that if the law permitted he would. The Court added that a failure to bring in a verdict could only arise from a flagrant disregard of the evidence, the law, and their obligation as jurors. On an exception being taken the judge repeated that he could not tell them in so many words to find the defendant guilty but that what he said amounted to that; * * *."

The court on the same page, in discussing this charge, said:

"The facts were not in dispute, and what he did was to say so and to lay down the law applicable to them. In such a case obviously the function of the jury if they do their duty is little more than formal. The judge cannot direct a verdict it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts. But the judge always has the right and duty to tell them what the law is upon this or that state of facts that may be found, and he can do the same none the less when the facts are agreed. * * * If the defendant suffered any wrong it was purely formal since, as we have said, on the facts admitted there was no doubt of his guilt."

It will be noted there was no dispute as to the facts in the case and the court's charge was the equivalent of a statement of law. In other words, with no issue of fact presented, it was a question of law as to whether the agreed facts brought the defendant within the statute alleged to have been violated. While the court affirmed the conviction and thus approved the procedure, it is interesting to note that four of the Justices dissented. Thus, the words "and only in exceptional cases" referred to

in the quotation in the Murdock Case, should, in my opinion, be confined to cases where the facts are agreed upon, or at any rate, are not in dispute. This view, I think, is strengthened by the last sentence in the quotation from the Murdock Case in which the court distinguishes it from the Horning Case on the ground "the present, however, is not such a case," meaning that the facts are neither admitted nor undisputed. It is also important to note that a reversal by this court of the judgment of conviction in the Murdock Case was affirmed by the Supreme Court with a holding of reversible error on account of the charge of the Trial Judge in which he expressed an opinion "that the Government has sustained the burden cast upon it by the law and has proved that this defendant is guilty in manner and form as charged beyond a reasonable doubt." How can there be any difference in principle in an expression by the Trial Judge to the effect that the defendant is guilty beyond a reasonable doubt, or merely that he is guilty?

In Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (cited in the opinion) the court on page 470, 53 S. Ct. on page 699, made this very signficant and important statement:

"The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided.' "

In this case the court was considering the comment made by the trial court upon the testimony of the defendant. As will be noted, the court emphasizes that such comment "should be so given as not to mislead, and especially that it should not be one-sided." It would seem paradoxical to preclude a court from making "one-sided" comment upon the evidence and at the same time permit it to express an opinion upon what is fundamentally a jury question and which, from its very nature, could not be otherwise than "one-sided."

So, it is my conclusion that the Supreme Court has not approved the right of a Trial Judge in a jury case to express an opinion upon the ultimate issue to be decided by the jury, except in the particular situation wherein the facts are not in dispute, and in my opinion the rule should be thus limited.

TREANOR, Circuit Judge, concurs in the reversal of the judgment of the District Court and joins in the views expressed by Judge MAJOR in his concurring opinion.