[Crim. No. 2148. First Dist., Div. Two.—April 4, 1941.]

THE PEOPLE, Respondent, v. EDWARD L'HOMMEDIEU, Appellant.

Raine Ewell for Appellant.

Earl Warren, Attorney-General, and Dennis Hession, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—This is an appeal from a final judgment that the defendant L'Hommedieu was guilty of the crimes of second degree robbery and of the unlawful possession of a pistol in violation of section 2, chapter 1098, Statutes of 1931, and from the orders of the trial court denying L'Hommedieu's motion for a new trial and his motion in arrest of judgment. The defendant L'Hommedieu contends that except for certain admissions introduced in evidence there was no other evidence that he participated or was guilty of any of the acts charged against him. Clearly that contention is without foundation.

On the trial of the action both Physioc and L'Hommedieu, the accused offenders, tendered themselves as witnesses and were examined at length. From their testimony and the testimony of other witnesses, the following facts appeared.

Prior to the 13th day of February, 1940, Louis Physioc had been employed by Judd Goodrich and was residing in Los Angeles. In his employment he acted as delivery man and for the purpose of making deliveries drove a Chevrolet coupe owned by his employer. He had made the acquaintance of the defendant Edward L'Hommedieu. On the morning of the day last stated the two were seated in the automobile. Physioc asked Goodrich for permission to use the automobile as he was changing his room. The permission was granted. Shortly thereafter Physioc and this defendant drove to the summer home of defendant's mother. There the defendant entered the house in his mother's absence, picked up his mother's diamond wrist watch and a Gladstone bag which contained nothing except a pistol. The two thereupon left for San Francisco. On arriving there they registered at the Hotel Jessie. Physioc registered as Lewis Davis. This defendant registered as Jim Davis. Both registered as from Reno. They were assigned to room 71. The next morning L'Hommedieu delivered his mother's watch to Physioc and the latter pawned it borrowing the sum of $15. In making out the pawn ticket Physioc gave his address as room 71, Hotel Jessie. During the day of the 14th the two traveled about San Francisco visiting dance halls and places where drinks were served. That evening at about 10 o'clock, Physioc, dressed in his street clothes and wearing a brown corduroy overcoat, entered a barroom at 698 San

Jose Avenue. Leona Hough was the attendant in charge. The room was well lighted. He was not disguised in any manner but carried a pistol in his right hand. He walked to the cash drawer and commanded Leona to give him the cash. When she opened the drawer he reached in with his left hand, took about $45 currency and coin, and then backed out of the store. As he did so he said to her, ''Take it easy''. She followed him to the outside and there she saw him step into the right-hand side of an automobile which she believed to be moving slowly as he entered it. At once she telephoned the police and a little later gave a full written statement. That statement described the automobile and also set forth that the individual who robbed her was wearing a brown corduroy coat. The evidence discloses that according to the contention of Physioc and L'Hommedieu, as appears from their testimony in court, they were together continuously from the time they left Los Angeles until the morning of February 15th, when they were arrested while in bed at the Hotel Jessie.

Something regarding the pawn of the watch caused the police to investigate. At about 10:30 A. M. on February 15th, Officer Jesse Ayer and his assistant went to room 71 in Hotel Jessie, regarding the pawning of the watch hereinabove mentioned. On arriving there the door was opened in response to their knock. Physioc and L'Hommedieu were in bed. On a bureau Ayer found a bullet, some keys, and also some money. After talking to the defendant and his companion Ayer made a further investigation. A Gladstone bag was under the bed. With one of the keys on the bureau he opened the bag which was empty except in a pocket there was a pistol. The bullet on trial fitted the pistol. Still pursuing the watch transaction Ayer directed the defendant and his companion to dress and go to the Hall of Justice. Physioc put on his brown corduroy overcoat. As they approached the Hall of Justice, Officer Butz, in charge of the robbery detail, was on the sidewalk and had in his possession the report of the police regarding the robbery. When he saw the brown corduroy overcoat he became interested. It will suffice to state that within a few hours Physioc was identified as the individual who had robbed Leona Hough and that he had held at that time the pistol located by Officer Ayer. In company with Officer Butz and his assistant, Physioc went to locate the automobile. Shortly it was located near 22d and Guer-

rero. Not long after the automobile had been taken to the police garage it was definitely ascertained that it was the automobile owned by Goodrich and which had been driven to San Francisco, according to the sworn testimony of Physioc and L'Hommedieu, by them. Moreover, shortly after their arrest photographs were taken of Physioc and L'Hommedieu, numerous interviews were had, and some of those interviews were taken down by a stenographic reporter attached to the police department.

Without examining the evidence adduced in the interviews just mentioned it is proper to note that on the 28th day of February the district attorney filed an information against Physioc and L'Hommedieu charging them with robbing Leona Hough; with using a revolver in committing the offense, and charging a prior conviction against L'Hommedieu and two prior convictions against Physioc. On the 19th day of April the district attorney filed an information against the two defendants charging them with grand theft in stealing the Goodrich automobile and also charging that they used a revolver. In the latter information each defendant was charged with a prior conviction. On the same day an information was filed charging L'Hommedieu with the violation of section 2, chapter 1098, Statutes of 1931 (defining the unlawful possession of a pistol). An information was also filed against Physioc charging the same offense. When called upon to plead, the priors were admitted and a plea of not guilty was entered as to each of the charges above mentioned. At the time of the trial all actions were consolidated for the purposes of the trial. (Pen. Code, sec. 954.) As to the first charge, Physioc was found guilty of robbery in the first degree, L'Hommedieu of robbery in the second degree. As to the second charge, it was dismissed as to L'Hommedieu and Physioc was found guilty. As to the third and fourth charges, each was found guilty as alleged in the information. Applying the evidence recited above to the actions just enumerated, it is clear the *corpus delicti* was sufficiently established. In other words, the testimony of Leona Hough established a complete case against Physioc as the one who personally robbed her and, taking the sworn testimony of the two defendants that they continuously remained together, the jury could infer that L'Hommedieu was with Physioc when the robbery was committed, and that he was the one who

drove the car away from the robbery and was therefore a party to that offense. The proof also showed that this defendant had unlawful possession of the pistol from the time the pistol was obtained in Los Angeles until the time of his arrest. As to both the charge of robbery and the charge of unlawful possession of the pistol the *corpus delicti* was proved.

Returning to the interviews between the officers of the police department and the two offenders, it is obvious that said interviews were therefore admissible. Being admissible the guilt of each defendant was clearly established and each admitted *in toto* his acts and participation in each offense charged against him.

True it is that at the time of the trial each defendant attempted to testify to a set of facts at variance with his admissions made to the peace officers. Such evidence merely created conflicts which were addressed to the jury for determination and with which this court has no concern.

■ As noted above the jury found Physioc guilty of robbery of the first degree and it found L'Hommedieu guilty of the same offense in the second degree. This defendant asserts this was error. That assertion is not well founded. Perhaps L'Hommedieu did not know that Physioc was going to use or did use a pistol in committing the robbery. If so he was not as culpable as Physioc. Be that as it may he may not complain because the verdict in his behalf was more favorable than it should have been. (*People* v. *O'Neal*, 2 Cal. App. (2d) 551, 562 [38 Pac. (2d) 430].) ■ The defendant also contends that the trial court erred in admitting the pistol and bullet in evidence. In that connection he contends they had not been sufficiently identified. When Mr. Ayer took possession of the bullet he marked it and identified it when called as a witness. When he took possession of the pistol he retained possession thereof until it was produced at the hearing. Leona Hough when called as a witness was shown the pistol and allowed to examine it. She testified that it looked like, in general size, color and appearance, and resembled the gun the defendant (Physioc) had in his hand. That testimony taken in connection with the fact that the robbery occurred on February 14th, that the defendant was arrested the next morning, that the pistol was in his room at the time of the arrest, and that a complete identifica-

tion of the defendant was made and his confession was obtained on February 15th, we think the identification was sufficient. (*People* v. *Hale,* 81 Cal. App. 734 [254 Pac. 639].)

The judgment and orders appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.