THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ ANTONIO NEGRÓN RODRÍGUEZ, Defendant and Appellant.

No. 15182.  Argued April 7, 1952.—Decided June 13, 1952.

*F. Hernández Vargas* for appellant. *Víctor Gutiérrez Franqui, Attorney General, (Federico Tilén, Assistant Attorney General,* on the brief), and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Appellant herein, together with Feliciano Pérez Rivera, Alejandro Figueroa Ríos, Ramón Luis Serrano Torres,

Inocencio Morales Padilla, Eulogio Morales Nieves, Elmer Rivera Nieves and Antonio Nieves Alvarez was charged in the District Court of Puerto Rico, Bayamón Section, with the offense of attempt to kill. It was alleged in the information that on October 30, 1950, at Georgetti Street of the town of Naranjito, the defendants "unlawfully, willingly, and criminally, with malice, premeditation and deliberation, and with the firm and deliberate intent of causing the illegal death of Juan Rivera Ferreris, a human being, Lieutenant of the Insular Police of Naranjito, who was on the porch of the Insular Police Headquarters of Naranjito at Georgetti Street, assaulted with rifles and pistols which are deadly weapons, Lieutenant Juan Rivera Ferreris, firing a shot at him without succeeding in wounding him."

The jury who sat at the trial rendered judgment against appellant herein for the offense of attempt to kill, and against each of the seven other codefendants for the offense of aggravated assault.

The court imposed on appellant an indeterminate sentence of 5 to 10 years in the penitentiary and on each of the other codefendants one year in jail.

The present appeal was brought by José Antonio Negrón Rodríguez—codefendant charged with attempt to kill—and assigns as an only error that the trial judge refused to correct the verdict rendered against him and to substitute it for aggravated assault, sentencing him to 5 to 10 years imprisonment in the penitentiary and not to one year in jail as the rest of the codefendants found guilty of aggravated assault. Let us proceed to examine it.

■■ The evidence for the prosecution, which was the only evidence introduced at the trial, showed, briefly, that appellant herein, in the morning of October 30, 1950, went to the square of the town of Naranjito and invited several of his acquaintances "to a small party" at his house. These persons boarded the bus—driven by appellant—and went

towards "Higuillar" ward, where he lived. During the trip, addressing his companions, appellant told them: "Boys, the time has come for the revolution," "are you willing to join me in the Nationalists' revolt?" When appellant's "guests" reached his house, they remained "outside," and told him that they could not "do that," whereupon defendant then accused them of being cowards. While this was going on, Alejandro Figueroa Ríos—another of the codefendants —from the garage "was aiming at us from the window, being always on the alert watching us, and there two bullets slipped off" a rifle which he carried.

The other codefendants were inside the house "cooking plantains and vegetables in the kitchen for their dinner." There they had rifles, one had a fixed bayonet, and they were preparing "something like a tube with a fuse." Appellant filled a small valise with bullets and dynamite which they took out of a box. At about eleven o'clock in the morning they headed for town in one of their buses, taking with them the aforesaid valise and four rifles—including the one with the fixed bayonet which appellant carried, beside two pistols in his belt "like a cowboy." Upon boarding the bus, then driven by codefendant Feliciano Pérez Rivera, "they went to the town with the rifles and the valise for the purpose of killing the policemen and taking hold of the City Hall, of the Internal Revenue Office, and police station, because they wanted to seize all that", as appellant herein informed the "guests" when he explained, on their way home, the true purpose of his invitation. The "guests" remained in the place until half past two in the afternoon because appellant told them "You can't go to town until I go there first," and threatened them that "if we went to town he would kill us."

Already in town, the bus passed at an excessive speed by police headquarters, about 12:40 p.m., and at a distance of about 15 or 20 feet appellant aimed and fired his rifle at Lieutenant Juan Rivera Ferreris, who was standing on the

porch of the station, without wounding him. The bullet went past his head and hit against the wall to his left. He took a step back, took out his revolver and fired a shot. The bus stopped at about 150 yards from headquarters and the men dismounted—appellant with the other codefendants— with the weapons they were carrying and the bag. They walked towards headquarters and at a distance of about 50 or 70 yards "they assumed a firing position in order to shoot at headquarters," but then started running towards the hill.

The bag was seized and it contained homemade bombs, two rolls of electric wire, bullets, two pliers, one cold chisel and 13 boxes of dynamite, according to an expert's testimony who verified the explosive nature of the bombs.

The material evidence, duly identified, was admitted by the court.

In view of these facts, the conclusion is inescapable: appellant, as well as the rest of the codefendants could all have been convicted of the offense charged in the information, that is, attempt to kill. However, notwithstanding the inconsistency of the verdict of attempt to kill rendered against appellant herein with the verdicts of aggravated assault rendered against the other codefendants, said verdict is valid and will not be altered as it is amply supported by evidence. This is the prevailing rule in California, from where we adopted our Code of Criminal Procedure. *People* v. *Black*, 80 Cal. App. 605; *People* v. *Richardson*, 83 Cal. App. 302; *People* v. *O'Neal*, 2 Cal. App. 2d 551; *People* v. *L'Hommedieu*, 44 Cal. App. 2d 27; *People* v. *Beck*, 95 Cal. App. 257; *People* v. *Blackwood*, 35 Cal. App. 2d 728. Fricke, California Criminal Procedure, p. 311; *Cf. People* v. *Wilson*, 54 Cal. App. 2d 412; *People* v. *Edwards*, 81 Cal. App. 2d 655. And in other jurisdictions, such as New York, *People* v. *Cohen*, 223 N. Y. 406, 119 N. E. 886. See also *Dunn* v. *United States*, 284 U. S. 390, 76 L. ed. 356; *United States*

v. *Bergdoll*, 272 F. 498; *Pilgreen* v. *United States*, 157 F. 2d 427; *United States* v. *Meltzer*, 100 F. 2d 739.

▉ Appellant, in view of the other verdicts of aggravated assault, undertook to inquire in the lower court whether the verdict rendered against him for attempt to kill was a "verdict by compromise." On this particular, let us hear Judge Holmes in *Dunn* v. *United States, supra:* "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." *Young* v. *United States*, 168 F. 2d 242.

Since the verdict rendered against appellant is supported by evidence, it shall not be altered. The fact that the jury either forgetting the law set forth in the instructions delivered to it or inspired in a wrong sense of mercy, should feel inclined to unduly favor the other codefendants by returning a verdict of aggravated assault against them, does not render the verdict against appellant void nor reduces it to the level of the one returned against the other codefendants.

The judgment will be affirmed.